**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |  |
|---|---|---|
| LOYAL SOURCE GOVERNMENT SERVICES, LLC, | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) ) | No. 24-1426 Judge Bonilla |
| UNITED STATES, | ) ) | |
| *Defendant*. | ) ) ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER AND CROSS-MOTION TO COMPEL**

Samuel B. Knowles
(Counsel of Record)
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4404
Fax: (202) 799-5404
E-mail: sam.knowles@us.dlapiper.com
*Counsel for Loyal Source Government Services, LLC*

Of Counsel:
Thomas E. Daley
Peter F. Nelson
DLA Piper LLP (US)

Dated: June 2, 2025

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.      Introduction ...................................................................................................... 1

II.     Questions Presented ........................................................................................ 2

III.    Statement Of The Case And Relevant Facts .................................................. 2

        A.      Procedural Background ........................................................................ 2

        B.      Troy Hendrickson Has Relevant Information—Including About His Actions as a
                CBP Employee that Impacted the Challenged Performance Evaluation. ................ 6

IV.     Legal Standard ................................................................................................ 9

V.      ARGUMENT ................................................................................................ 10

        A.      Mr. Hendrickson Has Relevant and Discoverable Information Related to Loyal
                Source's Claims. ................................................................................ 10

        B.      The Court Should Deny the Government's Motion and Order the Government to
                Make Available Mr. Hendrickson for his Deposition. ........................................ 13

VI.     CONCLUSION ............................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Big Easy Studios, LLC v. United States*,
    147 Fed. Cl. 539 (2020) ...................................................................................................10, 11

*BLR Grp. of Am., Inc. v. United States*,
    84 Fed. Cl. 634 (2008) ............................................................................................................12

*In re Deutsche Bank Trust Co. Americas*,
    605 F.3d 1373 (Fed. Cir. 2010)...............................................................................................10

*Forest Products Northwest, Inc. v. United States*,
    453 F.3d 1355 (Fed. Cir. 2006)...............................................................................................10

*Herrmann v. United States*,
    127 Fed. Cl. 22 (2016) ................................................................................................10, 13, 15

*Loyal Source Gov't Servs., LLC v. United States*,
    175 Fed. Cl. 779 (2025) ..........................................................................................................11

*Res. Invs., Inc. v. United States*,
    93 Fed. Cl. 373 (2010) ............................................................................................................13

*Starry Assocs., Inc. v. United States*,
    125 Fed. Cl. 613 (2015) ..........................................................................................................12

*United States v. Hansen*,
    233 F.R.D. 665 (S.D. Cal. 2005) ............................................................................................14

*United States v. Procter & Gamble Co.*,
    356 U.S. 677 (1958)................................................................................................................13

**Regulations**

FAR 42.1503.................................................................................................................................12

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|:---:|:---|
| 1 | Loyal Source 30(b)(1) Deposition Notice (Troy Hendrickson) (May 1, 2025) |
| 2 | M. Lewis Email to S. Knowles (May 2, 2025) |
| 3 | A. Meza Email to S. Knowles (May 23, 2025) |
| 4 | S. Knowles Email to M. Lewis (May 28, 2025) |
| 5 | S. Knowles Email to M. Lewis (May 26, 2025) |
| 6 | Loyal Source 30(b)(1) Deposition Notice (Troy Hendrickson) (May 20, 2025) |
| 7 | Troy Hendrickson Letter (Nov. 30, 2023) |
| 8 | Declaration of Ryan O'Quinn (June 2, 2025) |

Pursuant to Rule 7(b) of the Rules of the U.S. Court of Federal Claims ("RCFC"), Plaintiff Loyal Source Government Services, LLC ("Loyal Source") respectfully requests that the Court deny Defendant's Emergency Motion for a Protective Order and, pursuant to RCFC 5.4(a)(5) and 37(a), grant Loyal Source's Cross-Motion to Compel.  Loyal Source also requests that the Government be ordered to produce Troy Hendrickson for a deposition within one week of the Court granting Loyal Source's Cross-Motion.

## I.     INTRODUCTION

Plaintiff seeks to depose Troy Hendrickson, a current Government employee who was previously the Contract Officer Representative ("COR") under Loyal Source's medical screening services contract with the U.S. Customs and Border Protection ("CBP").  Importantly, Mr. Hendrickson has information directly related to the counts raised in Loyal Source's Complaint. Public documents confirm that Mr. Hendrickson has been involved in internal agency disagreements related to performance assessments of Loyal Source and conflicting views of contractual requirements.  Further, Mr. Hendrickson has acknowledged being part of a "team of twelve" personnel from the CBP Office of the Chief Medical Officer ("OCMO") that sought to downgrade Loyal Source's ratings to create a record to be leveraged against Loyal Source in the context of bid protests, audits, and CBP Office of Professional Responsibility ("OPR") investigations.  The record here does not support the Government's assertions.

Together, the Government and Mr. Hendrickson's counsel from the Government Accountability Project, Andrea Meza, oppose all avenues for the deposition.  The Government opposes a deposition under RCFC 30(b)(1), and counsel for Mr. Hendrickson has indicated that she would move to quash any subpoena issued under RCFC 45.  Thus, the Government effectively seeks to foreclose Loyal Source's right to discovery in this respect, but offers no compelling rationale for doing so.  Rather, the Government's Motion points to vague "legal and ethical

1

complications" and suggests that "globally amenable" parameters for the deposition must be negotiated among the parties. Such unsupported assertions do not meet the applicable legal standard for precluding a deposition of Mr. Hendrickson.

The Government seems content to complicate and delay the discovery process. Meanwhile, the challenged performance assessment remains in the Contractor Performance Assessment Reporting System ("CPARS") causing ongoing and irreparable harm to Loyal Source. The Government's Motion should be denied, and the deposition of Mr. Hendrickson should proceed promptly.

## II.    QUESTIONS PRESENTED

1. Whether the Government is entitled to a protective order despite failing to establish good cause for not producing a CBP employee for a deposition noticed under RCFC 30(b)(1)?

2. Whether the Government should be required to make a CBP employee available for a deposition noticed under RCFC 30(b)(1) that will address actions the employee took within the scope of his employment at CBP?

## III.    STATEMENT OF THE CASE AND RELEVANT FACTS

### A.    Procedural Background

Loyal Source's interest in and request for the deposition of Troy Hendrickson is not new or unexpected. Loyal Source has sought information about and a deposition of Mr. Hendrickson for months. On February 18, Loyal Source served its initial disclosures, identifying Mr. Hendrickson as an individual likely to have relevant information. On February 21, Loyal Source served its first set of requests for production, first set of interrogatories, and first set of requests for admission, some of which pertained to actions that Troy Hendrickson took as a CBP employee. In late February, the Government complained Loyal Source's discovery was burdensome. In response, Loyal Source indicated it could scale back some of its requests in exchange for an "early" deposition of Troy Hendrickson. The Government was not receptive to this offer. On March 6,

the Government served its first set of requests for production on Loyal Source, including a request for documents related to Troy Hendrickson.

Loyal Source paused efforts related to Mr. Hendrickson's deposition only after the parties made material progress on settlement negotiations. That hiatus lasted until April 24, when the Government informed Loyal Source it lacked consensus on the settlement parameters the Government and Loyal Source had negotiated.

A week later, on April 30, Loyal Source called and left a voicemail for the Government about the deposition. Ex. 2 at 1. Receiving no response, on May 1, Loyal Source noticed, pursuant to RCFC 30(b)(1), the deposition of Troy Hendrickson, for a "mutually agreed-upon location, on May 20, 2025." Ex. 1 at 1; Joint Status Rep., ECF No. 18, at 2. The Government objected, calling the deposition a "fishing expedition," and complained, incorrectly, that Loyal Source did not try to coordinate in advance of serving the deposition notice. Ex. 2 at 1. On May 6, the parties conferred about Mr. Hendrickson's deposition but did not reach consensus. Joint Status Rep., ECF No. 18, at 2. On May 7, Loyal Source requested a status conference with the Court to discuss, among other things, Mr. Hendrickson's deposition. Joint Status Rep., ECF No. 18, at 2. On May 8, the Court set a status conference for May 14. Order, ECF No. 19 at 1. On May 9, the Government informed Loyal Source that it would move to remand—despite previously stating that it "d[id] not intend to seek a remand." Joint Prelim. Status Rep., ECF No. 13 at 2.

On May 12—the Government's deadline for responding to Loyal Source's discovery requests—the Government moved for a voluntary remand. Mot. for Vol. Remand, ECF No. 20.

At the May 14 status conference, the Court denied the Government's motion and explained that the parties should, unless the Government filed a motion for protective order, proceed with the deposition, and make their objections on the record.

With the Court's guidance in mind, on Thursday, May 15, Loyal Source requested to meet and confer about Mr. Hendrickson's deposition.  On Friday, May 16, the parties met and conferred, after which the Government represented in an email message that it did not oppose Mr. Hendrickson's deposition and acknowledged Loyal Source's flexibility as to the deposition date:

> I have not been able to confirm plans for Mr. Hendrickson on my end.  Per our mutual impression, I think that the 20th is unlikely to be a possibility, but I am happy to facilitate an alternate agreeable time to the extent I am able.
>
> As indicated, I do not intend to oppose the deposition of Mr. Hendrickson within the scope of my representation, but given that some of Mr. Hendrickson's actions may be outside of my scope, and that Mr. Hendrickson is also adverse to the United States in an ongoing matter, there are multiple complicating factors.

Ex. 5 at 4.

The Government had seemingly not made substantive efforts toward arranging for the deposition until after its Motion for Voluntary Remand was denied.  On Monday, May 19, Loyal Source offered to reschedule Mr. Hendrickson's deposition for May 29, May 30, June 6, or June 9.  Ex. 5 at 3.  Receiving no response, on May 20,[1] Loyal Source served an amended RCFC 30(b)(1) notice of Mr. Hendrickson's deposition, scheduled for May 29, at DLA Piper's Washington, D.C. office.  Ex. 5 at 2–3; Ex. 6 at 1.  Receiving still no response, on Thursday, May 22, Loyal Source asked the Government to confirm receipt of the deposition notice.  Ex. 5 at 2. The Government did not respond.

Instead, that evening, Ms. Andrea Meza of the Government Accountability Project informed Loyal Source that she represented Mr. Hendrickson, who was "willing to appear for the deposition" so long as his appearance was not in person and his "conditions" were met—including providing the "subject areas for the deposition" so Mr. Hendrickson could be properly

---

[1] The Government's Motion for Emergency Protective Order erroneously states that the deposition notice was served on May 22, 2025.  Mot. For Protective Order, ECF No. 26, at 2.

"prepare[d]."  Ex. 3 at 2.  If Loyal Source wanted a standard deposition, Ms. Meza demanded

Loyal Source "serve [Mr. Hendrickson] with a Rule 45 subpoena," so he could "seek an

appropriate protective order."  Ex. 3 at 2.

The next day, Loyal Source emailed a RCFC 45 subpoena to Ms. Meza and asked if she

would accept service.  Ex. 3 at 1.  Loyal Source offered to meet and confer "if there is not a

reasonable amount of time to comply with the subpoena" or "if the Washington, D.C. location is

more than 100 miles from where Mr. Hendrickson resides, is employed, or regularly transacts

business in person."  Ex. 3 at 1.  An hour later, Ms. Meza responded:

> I am not and am not going to be authorized to accept service on Mr. Hendrickson's
> behalf.  I will try to get a hold of Mr. Hendrickson, recognizing that it is Friday
> afternoon of a holiday weekend.  If Mr. Hendrickson would like to accept service
> and provide you with his address I will let you know.

Ex. 3 at 1.

On May 26, Loyal Source asked the Government to confirm that Troy Hendrickson is a

Government employee.  Ex. 5 at 1.  On May 27, the Government responded, confirming that Mr.

Hendrickson is a Government employee and stating that Government counsel had been "<u>directed</u>

to proceed through his [Mr. Hendrickson's] attorney" and, thus, Loyal Source's only option was

to subpoena Mr. Hendrickson. Ex. 4 at 4 (emphasis added).[2]  In response, Loyal Source stated that

it "intend[ed]to proceed with the 30(b)(1) deposition noticed" for May 29 and reiterated what the

Court told the parties:  "[T]o the extent the Government has objections or concerns, it can state

those during Mr. Hendrickson's deposition."  Ex. 4 at 4–5.  That same day, Ms. Meza—without

moving to intervene or otherwise appear in this case—informed Loyal Source that Mr.

Hendrickson "will not be appearing" and that she would move to quash any subpoena served on

---

[2] The Government has not explained why Government counsel has been "directed" to proceed through Mr.
Hendrickson's counsel, who provided such direction, or the basis for proceeding in this manner.

Mr. Hendrickson.  That evening, the Government changed its position, indicating it would also "oppose the May 29th deposition."  Ex. 4 at 3.

### B.    Troy Hendrickson Has Relevant Information—Including About His Actions as a CBP Employee that Impacted the Challenged Performance Evaluation.

Troy Hendrickson's actions as a CBP employee impacted the performance evaluation implicated in this case, and his public letters confirm that he has knowledge relevant to the counts raised in Loyal Source's Complaint.

The performance evaluation at issue in the Complaint addresses Loyal Source's performance under Order No. 70B03C23F00000272, under Contract No. 36F79722D0185 (the "Contract"), during the period of March 30, 2023, through November 29, 2023.  *See* Compl., ECF No. 1, ¶ 35.  The Contract is a follow-on contract to incumbent contracts that Loyal Source has performed since 2015.  Compl. ¶ 11.  Although the environment along the border is dynamic, the underlying contractual requirements of Loyal Source have been substantially consistent since 2015.  The incumbent and current task orders have been managed by the CBP's Office of Acquisition.

According to the November 30, 2023 letter that Mr. Hendrickson and the Government Accountability Project published, Mr. Hendrickson started working for the CBP OCMO in April 2021.  Ex. 7 (Nov. 30, 2023 Letter) at 5.  While in that role, Mr. Hendrickson became the COR for Loyal Source's incumbent contract.  *Id.*  In Mr. Hendrickson's November 30, 2023 letter, he claimed to have "dual roles," reporting to both OCMO and the Office of Acquisition, leaving "him vulnerable to the tensions that arose between these components over disagreements" regarding Loyal Source's performance.  *Id.* at 5–6.

"Within 2 weeks" of becoming COR, Mr. Hendrickson states that he began having issues with the Contracting Officer for Loyal Source's incumbent contract.  Ex. 7 at 6.  Namely, Mr.

Hendrickson would raise concerns about Loyal Source that ultimately were either unsupported or unsubstantiated. *See* Ex. 8 (Declaration of Ryan O'Quinn) ¶ 10 ("Troy Hendrickson sought to impose arbitrary, extra-contractual performance obligations."). As Mr. Hendrickson's November 30, 2023 letter explains:

> By 2022, there was a clear pattern in which OCMO sought to ensure that appropriate medical services were available and properly delivered via the contractor, Loyal Source, but felt hindered by their lack of authority to enforce the contract. This authority was held by [Office of Acquisition] staff—most specifically CO 1—who were hesitant to hold Loyal Source to the performance measures CMO Tarantino felt necessary to meet medical ethics and care obligations. <u>There was a tension between [Office of Acquisition's] focus on the plain language of the Scope of Work and conservative readings of the FAR and Dr. Tarantino's vision, based on his years of medical experience, about the level of contractor performance required to meet OCMO's mandate of safe and ethical medical service delivery.</u>

Ex. 7 at 10 (emphasis added). In other words, there was "tension" between the Office of Acquisition's focus on the contractual requirements in Loyal Source's incumbent contract and OCMO's desire to impose extracontractual requirements on Loyal Source to satisfy the Chief Medical Officer's "vision" of what the contract should require. *See id.*

On or around January 2022, Mr. Hendrickson learned of a draft performance review, prepared by the Contracting Officer and prior COR, that rated Loyal Source as "Exceptional" in all areas for September 2020 to September 2021. *See* Ex. 7 at 11. Thereafter, Mr. Hendrickson "informed CO 1 that he and a team of twelve personnel from OCMO would complete a new draft of the CPARS for the [period ending September 2021], and would also begin a first draft of an interim CPARS for the [period] beginning September 30, 2021." *Id.*

In the revised performance evaluation for the September 2020 to September 2021 period, the "team of twelve OCMO personnel, including Mr. Hendrickson . . . lowered Loyal Source's ratings from 'exceptional' to 'unsatisfactory' and 'marginal' with a recommendation against

consideration of Loyal Source for future similar contracts." Ex. 7 at 11. Mr. Hendrickson "made explicit" that the "downgrade[d]" performance evaluation that he and the team of OCMO employees prepared should be used as a "record for a potential GAO protest, audits, and OPR investigations." *Id.* Mr. Hendrickson also "submitted this draft CPARS to the Joint Intake Center for inclusion in CBP OPR's investigations." *Id.*

In April 2022, Mr. Hendrickson was removed from his role as COR on Loyal Source's contract. Ex. 7 at 12. The removal followed months of apparent disagreements between Mr. Hendrickson and staff from the Office of Acquisition, including the Contracting Officer (*see id.* at 12–14), as well as misconduct by Mr. Hendrickson in connection with Loyal Source's contract. *See, e.g.*, *id.* at 13 (Mr. Hendrickson acknowledging that he sent an email purporting to inform Loyal Source employees that any non-compete clauses in their employment agreements with Loyal Source were unenforceable); *see also* Ex. 8 ¶¶ 12–13 (explaining that Mr. Hendrickson was removed as the COR for Loyal Source's contract for, among other reasons, sending "an extraordinary (and unauthorized) email to all Loyal Source employees working within CBP facilities in which he incorrectly informed them that they were released from the restrictive covenants they signed as employees of Loyal Source").

At the time of his removal, Mr. Hendrickson and OCMO staff were drafting another performance evaluation for Loyal Source, which covered the period of performance beginning September 2021. Ex. 7 at 12. This performance evaluation alleged "ongoing deficiencies" in Loyal Source's performance (*id.*) and suffered from the same issues and bias as the prior performance evaluation that Mr. Hendrickson and the team of OCMO employees had drafted.

Even after removal as the COR, however, Mr. Hendrickson held authority over Loyal Source as an OCMO employee and as the "OCMO [Medical Services Contract] budget liaison."

Ex. 8 ¶¶ 13–15.  Mr. Hendrickson has also continued to take actions that adversely affect Loyal Source and negatively influence Loyal Source's performance evaluations and prospects in ongoing procurements, including potentially leaking procurement-sensitive information to the *Washington Post* and publishing at least two letters publicly disparaging Loyal Source's performance.  *See, e.g.*, Compl. ¶¶ 102–106; Ex. 8 ¶¶ 20–23.

Moreover, after Mr. Hendrickson's removal as the COR, the Contracting Officer upgraded the ratings in the performance evaluation that Mr. Hendrickson and the team of twelve OCMO employees had drafted for the period of September 2020 through September 2021.  *See* Ex. 7 at 12.  Specifically, the Contracting Officer changed the ratings from "unsatisfactory" and "marginal" to "exceptional" and "very good" (*see id.*), indicating that the Contracting Officer disagreed with the unfounded and misleading allegations that Mr. Hendrickson and the team of OCMO employees had made in the draft evaluation.  Unfortunately for Loyal Source, the efforts of Mr. Hendrickson and other OCMO employees continued and eventually led to the negative performance assessment that Loyal Source has challenged in its Complaint.  Mr. Hendrickson has relevant knowledge of events before and after issuance of the performance evaluation at issue in this case.

## IV.    LEGAL STANDARD

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  RCFC 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.* "Whether information is relevant 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Big Easy Studios, LLC v. United States*, 147 Fed. Cl. 539, 544 (2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

During the discovery process, a party generally "may, by oral questions, depose any person, including a party, without leave of court." *See* RCFC 30(a)(1). Deposition notices under RCFC 30(b)(1) "are not required to include a list of deposition topics for the deponent or opposing party to review in advance of the deposition." *Herrmann v. United States*, 127 Fed. Cl. 22, 33 (2016).

Protective orders from noticed depositions are designed to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." RCFC 26(c)(1). The party requesting the protective order bears the burden of proof (*In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010)) and "must show 'good cause' why a protective order should issue" (*Forest Products Northwest, Inc. v. United States*, 453 F.3d 1355, 1361 (Fed. Cir. 2006)). "Good cause requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." *Forest Prods. Nw., Inc.*, 453 F.3d at 1361.

Under RCFC 37(a), a party "may move for an order compelling an answer, designation, production, or inspection" in response to a discovery request, including when there has been "an evasive or incomplete disclosure, answer, or response." "Attempts to limit the scope of a deposition or the availability of a deponent prior to the deposition itself would be considered 'an evasive or incomplete disclosure, answer, or response' under this rule." *Herrmann*, 127 Fed. Cl. at 32 (quoting RCFC 37(a)(4)).

## V.     ARGUMENT

### A.     Mr. Hendrickson Has Relevant and Discoverable Information Related to Loyal Source's Claims.

Since filing its complaint, Loyal Source has repeatedly explained that Troy Hendrickson—along with a team of other unnamed OCMO employees—directly impacted Loyal Source's performance ratings, causing a negative trend in Loyal Source's ratings that began only after Mr. Hendrickson became COR.

Loyal Source intends to use the deposition of Mr. Hendrickson to discover information that "bears on, or that reasonably could lead to other matter that could bear on," issues in the Complaint, as permitted under RCFC 26(b)(1). *See Big Easy Studios, LLC*, 147 Fed. Cl. at 544. For example, Mr. Hendrickson repeatedly acknowledges that, while serving as COR, he and a team of OCMO employees drafted a performance evaluation with "downgraded" ratings for Loyal Source to be used "as a record," to Loyal Source's detriment, in future procurement decisions, audits, and OPR investigations. *See* Ex. 7 at 11. Indeed, as a Court of Federal Claims decision recently noted, "[o]ne of the key takeaways from the November 30 letter is that Mr. Hendrickson is the ringleader of an anti-Loyal Source faction at CBP." *Loyal Source Gov't Servs., LLC v. United States*, 175 Fed. Cl. 779, 793 (2025). Mr. Hendrickson and other, unnamed OCMO employees were drafting a second performance evaluation for Loyal Source that contained similar unreasonable performance assessments at the time of Mr. Hendrickson's removal as the COR. *See* Ex. 7 at 12.

Loyal Source's position is that both of the performance evaluations discussed in Mr. Hendrickson's November 30, 2023 letter were tainted with bias from OCMO employees who were involved in drafting the performance evaluations and/or providing input regarding Loyal Source's performance. The unreasonableness of the evaluation at issue here is underscored by Mr. Hendrickson's statement that there was "tension" between OCMO and the Office of Acquisition, based on the Office of Acquisition evaluating Loyal Source's performance against contractual requirements, while OCMO was evaluating performance based on the Chief Medical Officer's "vision" and desire to impose extracontractual requirements on Loyal Source. *See* Ex. 7 at 10.

Loyal Source has also alleged that, subsequent to Mr. Hendrickson's removal as the COR, CBP has continued to issue performance evaluations, including the evaluation at issue in the Complaint, that are tainted by a "bias against Loyal Source advanced by Mr. Hendrickson and

others within OCMO." Compl. at 35. To Loyal Source's knowledge, CBP has not investigated, reviewed, or considered whether any of the members of the OCMO "team of twelve" that drafted the "downgraded" performance evaluation (based on false assertions) with the "explicit" purpose of being used as "a record for a potential GAO protest, audits, and OPR investigations" were involved in the performance evaluation at issue in the Complaint or otherwise remain involved in overseeing Loyal Source's contract performance. Those OCMO employees may remain in a position to adversely affect Loyal Source's performance evaluations by providing input that is neither fair nor accurate, in contravention of FAR 42.1503. *See BLR Grp. of Am., Inc. v. United States*, 84 Fed. Cl. 634, 641 (2008) ("[P]laintiff is legally entitled to a fair and accurate performance evaluation."). Mr. Hendrickson will know the identity of the members of the OCMO team of twelve, and Loyal Source can use that information to pursue additional discovery related to its claims of bias in Count II of Loyal Source's Complaint and breach of the duty of good faith and fair dealing in Count III of Loyal Source's Complaint.

While Government counsel asserts—without evidence or support—that Mr. Hendrickson was not involved in drafting or providing input for the performance evaluation at issue in the Complaint, Loyal Source is entitled to pursue discovery related to Mr. Hendrickson's involvement. Indeed, as evidence of bias is rarely part of an agency's records, the Court of Federal Claims has previously allowed depositions of agency employees relating to bias allegations. *See, e.g.*, *Starry Assocs., Inc. v. United States*, 125 Fed. Cl. 613, 621 (2015) (stating that evidence of bias or bad faith is "information that by its very nature would not be found in an agency record" and permitting a protestor to depose government employees (internal quotation marks and citation omitted)). Moreover, Mr. Hendrickson's November 30, 2023 letter demonstrates that OCMO employees are involved in the CPARS process. Mr. Hendrickson, as Loyal Source understands, remains a CBP

employee and may have influenced the evaluation at issue. Additionally, Loyal Source is entitled to pursue discovery relating to whether Mr. Hendrickson has been in contact with, or is working with, CBP employees responsible for drafting the performance evaluation at issue in the Complaint.

Simply put, there is significant evidence that Mr. Hendrickson has discoverable information related to his official duties as a CBP employee, all of which Loyal Source may properly ask about. If the Government has objections to Mr. Hendrickson's questions, counsel can state them on the record. *See* RCFC 30(c)(2); *see also Herrmann*, 127 Fed. Cl. at 37 ("Any objections to the relevancy or formulation of the plaintiffs' questions to Mr. Scott can be raised by the government during Mr. Scott's deposition and preserved on the record."). The Government, however, cannot unilaterally limit Loyal Source's right to seek relevant information through an RCFC 30(b)(1) deposition by declining to make the deponent available. *See, e.g.*, *Res. Invs., Inc. v. United States*, 93 Fed. Cl. 373, 379 (2010) ("Quite simply, the Government, like any litigant, cannot dictate what evidence is admissible in a court of law, or whose testimony the court may hear."); *cf. United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) ("The Government as a litigant is, of course, subject to the rules of discovery.").

### B.    The Court Should Deny the Government's Motion and Order the Government to Make Available Mr. Hendrickson for his Deposition.

The Government's request to avoid its obligation to make Government employees with discoverable information available for depositions should be denied. At no point in its motion does the Government say that Mr. Hendrickson's deposition would be inconsistent with the applicable legal standard; rather, the Government argues that Loyal Source must subpoena a Government employee (Mr. Hendrickson), regardless of whether the Government can make the Government employee available for deposition. Furthermore, the Government has provided no

detail as to the steps it took to secure Mr. Hendrickson's availability for the noticed deposition. The glaring lack of specifics suggests that the Government has done nothing in this regard, other than inform Mr. Hendrickson and Ms. Meza of the deposition notice.

The Government's demand for a "globally amenable" deposition (Mot. for Protective Order at 6) is also unreasonable and inconsistent with the RCFC. Loyal Source only needs to serve a deposition notice in accordance with RCFC 30(b)(1); it does not need to negotiate the terms for the deposition or agree to less favorable conditions than provided for under RCFC 30. *See, e.g.*, *United States v. Hansen*, 233 F.R.D. 665, 667–68 (S.D. Cal. 2005) ("Although Defendant attempts to justify his proposed limitations on the deposition as reasonable, there is no basis under the Federal Rules for him to refuse to attend a deposition until Plaintiff's counsel agrees to abide by his terms. . . . Defendant cannot require Plaintiff to agree to his proposed conditions."). Moreover, Loyal Source has attempted, for months, to find a date for Mr. Hendrickson's deposition, and conferred with the Government when concerns have been raised. The Government also (incorrectly) states that Loyal Source must serve a subpoena in order to depose Mr. Hendrickson, but Mr. Hendrickson, through counsel, has stated that he will move to quash any subpoena personally served on him.

More importantly, the Government does not establish good cause for why a protective order is necessary. The Government states—without support or explanation—that Mr. Hendrickson's deposition is "rife with legal and ethical complications." Mot. for Protective Order at 6. Yet, the Government has not identified a concrete legal or ethical issue with Mr. Hendrickson's deposition. The Government also claims the RCFC 30(b)(1) notice served on the Government is "inappropriate," again, without any explanation, citations, or other justification as to how it was "inappropriate."

14

In stark contrast, there are numerous indications that Mr. Hendrickson's has relevant and discoverable information directly related to his work as a CBP employee and to the performance evaluation at issue in the Complaint.  *See supra* Section III.B.  The Government's refusal to allow Mr. Hendrickson to testify in response to a properly issued RFCF 30(b)(1) deposition notice is without merit (*see Herrmann*, 127 Fed. Cl. at 32), and the Court should order that Mr. Hendrickson be made available for a standard deposition under RCF 30(b)(1).

## VI.    CONCLUSION

With approximately two months until the close of fact discovery, Loyal Source respectfully requests the Court deny the Government's Emergency Motion For Protective Order and grant Loyal Source's Cross-Motion to Compel.  Should the Court grant Loyal Source's Cross-Motion, Loyal Source respectfully requests that the Government be ordered to make Mr. Hendrickson available for a Rule 30(b)(1) deposition within one week of the order.

Respectfully submitted,

/s/Samuel B. Knowles

Samuel B. Knowles
**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4404
E-mail: sam.knowles@us.dlapiper.com
*Counsel for Loyal Source Government Services, LLC*

Of Counsel:

Thomas E. Daley
Peter F. Nelson
**DLA Piper LLP (US)**

Dated: June 2, 2025

## <u>CERTIFICATE OF FILING</u>

I hereby certify that on June 2, 2025, a copy of the foregoing was filed using the Court's Electronic Filing system.  I understand that notice of this filing will be served on the counsel to the parties to this case via the Court's ECF system.

Respectfully submitted,

/s/Samuel B. Knowles

Samuel B. Knowles
**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4404
E-mail: sam.knowles@us.dlapiper.com
*Counsel for Loyal Source Government Services, LLC*